UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CARL S. EY,**<br><br>    **Plaintiff,**<br><br>        v.<br><br>**JOHN M. MCHUGH,**<br>**Secretary of the Army,**<br><br>    **Defendant.** | Civil Action No. 12-862 (JEB) |

**MEMORANDUM OPINION**

In October 2009, an Army psychiatrist diagnosed Plaintiff Carl Ey, a Lieutenant Colonel then on active duty, with anxiety and depression. Just a month later, Ey received notice that he would be transferred to a new duty station some 1500 miles from his home in Washington, D.C. In response, he asked to retire from active duty, effective six months later. This would allow him to avoid reassignment and to continue his medical treatment until retirement. But Ey soon had second thoughts – since retiring on that timetable would mean forfeiting the chance at a promotion and certain benefits – and he subsequently asked the Army to allow him to stay on active duty until August 2011. The Army obliged, although it refused to guarantee that he would be considered for the promotion. Dissatisfied, Plaintiff decided to, in his words, "march on" into retirement. That, however, did not end the matter in his mind. Alleging that he had been improperly forced to choose between relocation and retirement, he asked the Army Board for Correction of Military Records to reinstate him. The Board declined. Plaintiff sought reconsideration by the ABCMR, and it again denied his claim, so he brought this suit.

1

A third round of Board review in the books – this one after remand from this Court – Plaintiff now challenges the ABCMR's decision as arbitrary and capricious, an abuse of discretion, and contrary to law. As relief, he asks the Court to reinstate him to active duty and to order the Army to consider him for promotion to Colonel. In light of the weighty deference owed to administrative decisions made by the armed forces, however, the Court cannot overturn the ABCMR's ruling. As a result, it will grant Defendant's Motion for Summary Judgment and deny Plaintiff's.

**I.      Background**

No one here denies that Carl Ey had a distinguished career in the Army, rising from Second Lieutenant to Lieutenant Colonel over the course of 19 years. See Administrative Record at 390. Unfortunately, 18 years into that career, in October 2009, Plaintiff's psychiatrist diagnosed him with an "adjustment disorder with anxiety and depressed mood." AR 5, 134. This "temporary profile" specifically opined that Plaintiff should not take the Army Physical Fitness Test, but it said nothing about reassignment or deployment, and Plaintiff was in fact reassigned from Washington, D.C., to Fort Riley, Kansas, on November 17, 2009. See AR 4. After some negotiating, it was agreed that the transfer would take effect on January 14, 2010. See AR 135, 144.

From there, events picked up steam. Around December 10, 2009, Ey asked his assignment manager for information regarding retirement in lieu of accepting a Permanent Change of Station, and he was told that, if he decided to pursue that option, his retirement paperwork would have to be submitted within thirty days of the original notification date of his reassignment – *i.e.*, by December 17, 2009. See AR 140. Getting in just under the wire, on December 15, Plaintiff submitted a request for retirement in lieu of his reassignment, effective

2

May 31, 2010. See AR 141-43. In his application for retirement, Plaintiff affirmed that he was "familiar" with the regulations regarding retirement and promotion, and that he understood that his retirement request could not be withdrawn. See AR 142.

Three days later, on December 18, Plaintiff notified Army Human Resources Command via e-mail that his health-care provider would be issuing him a second temporary profile recommending that he continue treatment at his present duty station through March 15, 2010, see AR 144, though he apparently never showed the documents to Human Resources Command. See AR 146. On December 30, his psychiatrist seconded that recommendation in a third temporary profile. See id. In light of those updates, Plaintiff asked that the Army allow him to rescind his retirement and delay his transfer until his treatment was complete. See id. Instead, on January 21, 2010, the Army approved his retirement request, effective May 31, 2010. See AR 175.

On March 1, 2010, Plaintiff asked to delay his already-approved retirement, ostensibly so he could complete his medical treatment. See AR 145. The Army declined. See AR 145. After his health-care provider reiterated that he should remain in Washington for an additional 90 days – this time through the middle of June – Ey again asked the Army to allow him to amend his retirement request. This time, it obliged and pushed his retirement date back to August 31, 2010. See AR 146.

At this point a bit of background on the Army's promotion policies may be helpful. Army officers are generally considered for promotion according to a strict schedule; promotion boards consider candidates for each rank annually, and this is the predominant, though not exclusive, avenue for promotion. Especially relevant to Plaintiff's case is Army Regulation 600-8-29, ¶ 1-10e, which states that an officer who is fewer than 90 days from retirement when a

promotion board convenes is ineligible for promotion. The 2010 Colonel Promotion Board – the body that would have had the authority to promote Plaintiff from Lieutenant Colonel – was scheduled to meet in June of 2010. See AR 291. Because that meeting fell within 90 days of Plaintiff's scheduled retirement date of August 31, 2010, he was notified via automatic e-mail on May 6 that he would not be considered for promotion. In response – or, as he tells it, because he had scheduled a foot surgery for June 3, 2010, and his doctor had recommended that he remain on active duty through his recovery, see AR 146 – Plaintiff petitioned to push his retirement back a year, to August 31, 2011. See AR 146, 284-89. His branch manager communicated to him that he would remain ineligible for consideration by the 2010 promotion board for the time being, but that if his retirement date were officially moved back, he would then become eligible. See AR 291. Of course, if the board met before Plaintiff's retirement date was changed, it would not be able to consider his candidacy. And that, indeed, appears to be what happened.

On July 21, 2010 – more than six weeks after the promotion board met – perhaps in response to the Surgeon General's determination that no physical or mental limitations should preclude Plaintiff from continuing his service, see AR 225-28, the Army notified Ey that it would approve his request to delay his retirement for a year, see AR 228, but that he would have to submit a new retirement application for procedural reasons. See AR 325-26. Plaintiff responded that unless he was seen by a Special Selection Board – a body that, per Army regulations, may consider an officer for promotion when he or she is improperly passed over by a regular selection board – he would continue with his plans to retire on August 31, 2010. See AR 325.

No response was apparently forthcoming, and Plaintiff, perhaps unsurprisingly, was not satisfied with the way things ended. In his mind, he had been offered a Hobson's choice

4

between transfer (and cessation of his medical treatment in Washington) and retirement by a certain date, and thus he was deprived of the chance to earn his promotion to Colonel, which would have carried with it significant monetary benefits. Since Army Human Resources Command had effectively denied his request to delay his retirement and had not placed him before a Special Selection Board, he went up the chain of (legal) command. Several weeks before the date he was scheduled to retire, Ey filed a claim with the ABCMR requesting that he be reinstated and that a Special Selection Board (SSB) consider him for promotion to Colonel. See AR 266-309. While that body deliberated, Plaintiff's retirement date arrived, and he left active duty at the rank of Lieutenant Colonel. See AR 203-04. The ABCMR ultimately denied his petition, concluding that his decision to retire was voluntary and that Army regulations did not provide for the revocation of retirement in cases like his. Plaintiff requested reconsideration, and the ABCMR again declined to grant relief. See AR 46.

Convinced of the purity of his cause, Plaintiff filed suit in this Court in May 2012. In December of the same year, at Defendant's request, the Court remanded the case to the ABCMR and directed it to consider several issues, including whether Army regulations and Plaintiff's temporary profiles should have limited his ability to be reassigned at the time he was transferred on November 17, 2009. See Order, December 21, 2012 (ECF No. 15). The Board revisited Plaintiff's case and held that the temporary profiles in effect at the time he received his transfer orders had no effect on his eligibility for reassignment. As a result, the Board concluded, Plaintiff had not been improperly forced to retire and, accordingly, that he was not entitled to an SSB.

Plaintiff's challenge to that decision is now before the Court. Ey argues that the Board's decision was arbitrary and capricious, an abuse of discretion, and contrary to law. As a result, he

contends, the Court should overturn the Army's decision and declare his retirement void, order that he be returned to active duty in the rank of Lieutenant Colonel, and require the Army to place him before a 2010-calendar-year promotion board. Defendant filed a Motion to Dismiss or, in the Alternative, for Summary Judgment, and Plaintiff responded with his own Cross-Motion for Summary Judgment.

## II. Legal Standard

Defendant's Motion relies in part on Federal Rule of Civil Procedure 12(b)(1), asking the Court to dismiss this case on the ground that Plaintiff's cause of action is moot. To survive a motion to dismiss under Rule 12(b)(1), the plaintiff bears the burden of proving that the Court has subject-matter jurisdiction to hear his claims. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); U.S. Ecology, Inc. v. U.S. Dep't of Interior, 231 F.3d 20, 24 (D.C. Cir. 2000). A court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority." Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001). For this reason, although the Court must "treat the complaint's factual allegations as true . . . and must grant plaintiff 'the benefit of all inferences that can be derived from the facts alleged,'" Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir. 2000) (quoting Schuler v. United States, 617 F.2d 605, 608 (D.C. Cir. 1979)) (citation omitted), "'the [p]laintiff's factual allegations in the complaint . . . will bear closer scrutiny in resolving [jurisdictional issues]' than [merits questions]." Grand Lodge, 185 F. Supp. 2d at 13–14 (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (2d ed. 1987)). The Court, moreover, "may consider materials outside the pleadings in deciding whether to grant a motion to dismiss for lack of jurisdiction." Jerome Stevens Pharms., Inc. v. FDA, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

Plaintiff relies on the Administrative Procedure Act, 5 U.S.C. § 701 *et seq.*, to challenge the ABCMR's decision, and Defendant seeks summary judgment as an alternative to its mootness argument. Summary judgment is one proper mechanism for adjudicating claims under the APA. See Loma Linda Univ. Med. Ctr. v. Sebelius, 684 F. Supp. 2d 42, 52 (D.D.C. 2010). Due to the limited role federal courts play in reviewing administrative decisions, however, the typical Federal Rule 56 summary-judgment standard does not apply in such cases. See Sierra Club v. Mainella, 459 F. Supp. 2d 76, 89-90 (D.D.C. 2006) (citing Nat'l Wilderness Inst. v. United States Army Corps of Eng'rs, 2005 WL 691775, at *7 (D.D.C. 2005)). Instead, "the function of the district court is to determine whether or not . . . the evidence in the administrative record permitted the agency to make the decision it did." Id. (citations omitted). Summary judgment thus serves as the mechanism for deciding, as a matter of law, whether an agency action is supported by the administrative record and otherwise consistent with the APA standard of review. See Bloch v. Powell, 227 F. Supp. 2d 25, 31 (D.D.C. 2002) (citing Richards v. INS, 554 F. 2d 1173, 1177 (D.C. Cir. 1977)).

The APA "sets forth the full extent of judicial authority to review executive agency action for procedural correctness." FCC v. Fox Television Stations, Inc., 556 U.S. 502, 513 (2009). It requires courts to "hold unlawful and set aside agency action, findings, and conclusions" that are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). Under this "narrow" standard of review – which appropriately encourages courts to defer to the agency's expertise, see Motor Vehicle Mfrs. Ass'n of United States, Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983) – an agency is required to "examine the relevant data and articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Id.

7

(internal quotation marks omitted). In other words, courts "have held it an abuse of discretion for [an agency] to act if there is no evidence to support the decision or if the decision was based on an improper understanding of the law." Kazarian v. U.S. Citizenship and Immigration Serv., 596 F.3d 1115, 1118 (9th Cir. 2010).

It is not enough, then, that the Court would have come to a different conclusion from the agency. See Nat'l Ass'n of Home Builders v. Norton, 340 F.3d 835, 841 (9th Cir. 2003). The reviewing court "is not to substitute its judgment for that of the agency," id., nor to "disturb the decision of an agency that has examine[d] the relevant data and articulate[d] . . . a rational connection between the facts found and the choice made." Americans for Safe Access v. DEA, 706 F.3d 438, 449 (D.C. Cir. 2013) (citation and internal quotation marks omitted). A decision that is not fully explained, moreover, may be upheld "if the agency's path may reasonably be discerned." Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974).

Deference is doubly warranted, moreover, when Courts review administrative decisions made by the armed forces. That extra deference has two sources. First, courts are particularly unfit to review the substance of military personnel decisions. See Escobedo v. Green, 602 F. Supp. 2d 244, 248-49 (D.D.C. 2009) (deference "calculated to ensure that the courts do not become a forum for appeals by every soldier dissatisfied with [a military personnel decision], a result that would destabilize military command and take the judiciary far afield of its area of competence") (internal quotation marks omitted). Second, the ABCMR's enabling statute grants special discretion to the Secretary of the Army, who acts through that body. It is true that federal courts review final decisions of the ABCMR according to APA standards. See Kidwell v. Dep't of the Army, Bd. for Correction of Military Records, 56 F.3d 279, 286 (D.C. Cir. 1995).

Considering the wide latitude granted to the Secretary by Congress, however, the D.C. Circuit has held that ABCMR decisions are to be granted an "unusually deferential application of the 'arbitrary or capricious' standard":

> [T]he statute . . . substantially restrict[s] the authority of the reviewing court to upset the Secretary's determination. It is simply more difficult to say that the Secretary has acted arbitrarily if he is authorized to act "when he considers it necessary to correct an error or remove an injustice," 10 U.S.C. § 1552(a), than it is if he is required to act whenever a court determines that certain objective conditions are met, *i.e.,* that there has been an error or injustice.

Kreis v. Sec'y of Air Force, 866 F.2d 1508, 1514 (D.C. Cir. 1989) (Kreis I).

This, of course, does not mean that federal courts may not review ABCMR decisions. Indeed, to affirm an Army ruling, "[t]he court . . . must be able to conclude that the Board 'examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a rational connection between the facts found and the choice made.'" Kreis v. Sec'y of Air Force, 406 F.3d 684, 686 (D.C. Cir. 2005) (Kreis II) (quoting Motor Vehicle Mfrs. Ass'n, 463 U.S. at 43). The Court need only determine, however, "whether the Secretary's decision making process was deficient, not whether his decision was correct." Kreis I at 1511.

## III. Analysis

Ey maintains that the ABCMR acted arbitrarily and capriciously when it denied his request to be reinstated as a Lieutenant Colonel and declined to place him before a calendar-year-2010 promotion board. As the Court will discuss shortly, this argument ultimately turns on whether Ey's resignation was voluntary. Before turning to that question, however, the Court must address Defendant's first argument – namely, that Plaintiff's claim is moot because the Army allowed him to delay his retirement.

9

A. <u>Mootness</u>

"[A] case is moot when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." <u>County of Los Angeles v. Davis</u>, 440 U.S. 625, 631 (1979) (internal quotation marks omitted). A plaintiff, moreover, cannot have an interest in the outcome of a case if the relief he seeks has already been provided. As a result, "[c]orrective action by an agency is one type of subsequent development that can moot a previously justiciable issue." <u>Natural Resources Defense Council, Inc. v. U.S. Nuclear Regulatory Comm'n</u>, 680 F.2d 810, 814 (D.C. Cir. 1982) (citing <u>Commissioner v. Shapiro</u>, 424 U.S. 614, 622-23 n.7 (1976)). "Even if [the] attack was originally well-founded," after all, the Court "can hardly order the [defendant] at this point to do something that it has already done." <u>Id.</u>

Defendant asserts, in essence, that Plaintiff's claim is moot because the Army "gave him exactly what he wanted." <u>See</u> Def. Mot. at 9. In particular, it points out that the Army approved Ey's request for an exception to its policy and allowed him to withdraw his retirement request so that he could remain on active duty until at least 2011. <u>See</u> AR 228 (E-mail from Major General Sean Byrne) ("I have directed that your request to withdraw your voluntary retirement action be approved. You should return for duty."). Even if Plaintiff's retirement was induced by a procedurally deficient reassignment notification, the Army claims, its decision to allow Plaintiff to withdraw that retirement moots his objections. <u>See</u> Def. Mot. at 10.

This is not quite true, however, since the Army did not give Plaintiff <u>everything</u> he is asking for here. In particular, it refused to place him before a 2010-calendar-year promotion board, an important component of the relief he seeks. As a result, his case is not moot. In its Reply, Defendant shifts gears, arguing that all of this is irrelevant because Plaintiff would <u>automatically</u> have been placed before a Special Selection Board if he had chosen not to retire.

10

See Def. Opp. and Reply at 5. Citing Army Regulation 600-8-29, ch. 7, Defendant points out that "Plaintiff in no way suggests that he would not have been able to request consideration before an SSB had he remained on active duty," id., and thus seems to imply that Plaintiff would have been eligible for promotion had he accepted the Army's offer to allow him to rescind his retirement. The regulations, however, do not appear to guarantee Plaintiff consideration before an SSB. They state only that a person who was <u>improperly</u> denied access to a normal selection board will be considered by an SSB, and the Army has not conceded any impropriety. In fact, the Army's position is premised on the opposite conclusion – namely, that because Plaintiff was within 90 days of retirement when the 2010 Board met, he was ineligible for consideration had he remained enlisted. See Def. SUMF, ¶¶ 28 (citing AR 312-326), 37 (citing ABCMR decision of May 19, 2011).

As a result, the Court cannot conclude that Plaintiff's case is moot. It will, therefore, turn to his substantive claim: that the ABCMR erred in denying him reinstatement with the opportunity for promotion on schedule.

    B.  <u>APA Violation</u>

The gravamen of Plaintiff's claim is that it was arbitrary and capricious for the ABCMR to refuse to grant him the remedies he sought. In particular, he argues that his retirement was involuntary because the Army (1) required him to accept reassignment or retire, despite his level T-3 temporary medical profile, which violated the regulatory scheme; and (2) misrepresented material facts that induced the retirement. See Pl. Mot. at 3-5. He also contends that the ABCMR applied the wrong standard in determining whether he was entitled to an SSB. See id. at 17-18. The Court will address each argument in turn.

        1.  *Temporary Profiles*

11

Plaintiff first argues that his temporary profiles – *i.e.*, his diagnoses of anxiety and depression – should have prevented him from being reassigned. See id. at 6-9. More specifically, he contends that an Army regulation and an internal policy memorandum preclude transfer of soldiers with a T-3 profile – the type of profile he claims he possessed at the time of his retirement. See id. at 8-9  The ABCMR, however, considered this argument and concluded that it had no merit, holding that Plaintiff's "temporary physical profile should have had no impact on his ability to be reassigned or deployed at the time he received his [reassignment]." AR 14.

The Board began with Plaintiff's first two temporary profiles and concluded that they did not explicitly limit his eligibility for reassignment. See id.  It noted that the first profile – the one issued in November 2009 – did prevent Plaintiff from taking the Army Physical Fitness Test but contained no specific assignment limitations. AR 4, 134.  The portion of the profile that would have limited Plaintiff's eligibility for reassignment, moreover, was "blank and did not indicate [whether Plaintiff] had any limitations or conditions which prevented [him] from deployment or [permanent change of station]." AR 14.  The Board noted, similarly, that Plaintiff's second temporary profile – dated December 13, 2009, and unchanged by December 15, when Plaintiff opted to retire – limited his eligibility for deployment but said nothing about transfer to a different domestic duty station. See AR 5.

The ABCMR next disregarded the analysis Plaintiff's psychiatrist filed on December 30, 2009.  Observing that this third profile had been brought to the attention of Plaintiff's superiors more than two weeks after he had submitted his (irrevocable) request to retire in lieu of reassignment, see AR 6, the Board concluded that the very premise of Plaintiff's case – the

12

notion that he was subject to a temporary profile limiting his eligibility to be reassigned at the time of his retirement – was faulty. See id.

The Board then examined the applicable regulations to determine whether the mere presence of a temporary profile prevents a soldier's reassignment, even if it does not explicitly say so. Plaintiff argued – and continues to maintain – that Army Reg. 600-8-101 and Office of the Surgeon General/Medical Command Policy Memorandum 09-061 preclude reassignment of those on a T-3 profile. Neither of those sources, however, is helpful to him. Regulation 600-8-101 does not address the actual reassignment of soldiers on a temporary profile. Instead, it discusses procedures for processing those who are arriving at or leaving a duty station. See Army Reg. 600-8-101 at ¶ 1-1 to 1-5. The regulation, moreover, does not contain the language Plaintiff cites in his Amended Complaint or in his Motion. Instead, that language comes from an Army pamphlet that details how to process soldiers who are departing an installation but does not alter the legal effect of the relevant regulations. See Def. Mot. at 18 n.8.

The ABCMR turned next to the Surgeon General's Memorandum. Two characteristics of the Memorandum render it wholly unhelpful to Plaintiff. First, it applies only to "Commanders [of] MEDCOM Regional Medical Centers," establishing the procedures that those commanders must follow when dealing with a behavioral health patient. See OTSG Policy Memo. 09-061, ¶ 5d, 5e. Plaintiff's doctors were not MEDCOM officers, so the Memorandum is irrelevant to his case. The document, moreover, provides only that facility commanders may "request deletion, deferment, or reassignment for the purpose of stabilizing a Soldier utilizing appropriate current policy and procedures." Id., ¶ 5e (emphasis added). As the Board noted, that language reinforces the fact that medical facility commanders do not possess ultimate authority over the assignment of individual soldiers. Instead, it observed, the relevant regulations vest Army

13

Human Resources Command with near-plenary authority to make those determinations. See AR 8-9.

Because nothing in the applicable regulations precludes reassignment of soldiers on temporary profile, and because Human Resources Command made the final decision regarding Plaintiff's assignment, the Board concluded that the decision was sound. See AR 13-14. Particularly given the deference owed to the military, the Court cannot find the ABCMR's conclusion to be arbitrary or capricious.

2. *Misrepresentation*

If Plaintiff is to prevail, then, he must prove that some other factor rendered his retirement involuntary. Ey contended before the ABCMR – and maintains now – that his retirement was involuntary and procedurally flawed because he was forced to choose between retirement and reassignment when in fact he should have been allowed a third option: delaying his retirement due to his medical diagnosis. This argument is flawed, as the ABCMR clearly explained.

In his Cross-Motion, Plaintiff suggests that he "relied upon the Army's statements that his temporary profile had no meaning and that his only choices were PCS or retire." Pl. Mot. at 16. Even if Plaintiff did rely on the Army's statements, that is of no moment for what the Court hopes is an obvious reason: his temporary profile did "ha[ve] no meaning" for reassignment purposes at the time of his retirement, and, as a result, reassignment and retirement were his only options when he picked the latter on December 15, 2009. Indeed, as the Court has just explained, and as the ABCMR rationally concluded, the temporary profiles operative at the time Plaintiff chose to retire did not restrict his eligibility for reassignment. The possibility of delaying his transfer would have become real only after the Army was notified of the updated

14

profile recommending against reassignment, which did not occur until sometime later. (The ABCMR concluded that notification did not occur until at least December 18 and probably not before December 30. See AR 21.) In those circumstances, it was not a "misrepresentation" for the Army to let Plaintiff believe – or even to tell him directly – that he had to choose between retirement and continuing on the road to reassignment, as that was the truth.

The ABCMR observed, moreover, that Plaintiff followed Army Regulation 600-8-24, which outlines the proper procedure in cases just like his. The regulation states that an officer may request retirement in lieu of reassignment if he has completed 19 years and 6 months of active service – as Plaintiff had – and that a candidate for such retirement must submit his request within thirty calendar days of the reassignment instructions – which Plaintiff did. See AR 12. The Army had every right to reassign Plaintiff and he had every right to retire, but Plaintiff is correct that his "only choices" were to accept one of those two fates. The Court sympathizes with the difficulty of such a choice, particularly given Plaintiff's mental health situation, but it is no position to rewrite Army regulations.

3. *Special Selection Board*

Plaintiff last argues that the ABCMR acted irrationally when it concluded that he was not eligible for consideration by a Special Selection Board. The Court cannot agree, as the ABCMR's conclusion stemmed from two premises that the Court has already endorsed. The first is that because military regulations did not preclude the Army from reassigning Plaintiff, his retirement was voluntary. See AR at 12. The second is that Plaintiff would have been entitled to an SSB only if he should have been considered for promotion but was not. See id. Yet Plaintiff's voluntary retirement precluded such consideration.

15

Plaintiff responds that the ABCMR used the wrong standard in evaluating his claims. Whereas he would have been entitled to an SSB if "administrative error" had caused a regularly scheduled promotion board to overlook him, see 10 U.S.C. § 628(a), he points out, the ABCMR instead evaluated his situation for material error. See Pl. Mot. at 17. This is true as far as it goes, but Plaintiff's logic does not withstand scrutiny. Although he is correct that the Board used the wrong terminology to describe the type of error it had to look for, the Board in fact found no evidence of any error on the part of the Army. See AR 46-47. Indeed, it concluded that regulations prohibited the Army from considering him for promotion. In those circumstances, the Court can hardly conclude that a mere slip of the tongue warrants reversal.

In sum, Plaintiff does not establish – or even argue – that the ABCMR's review was procedurally flawed. He nowhere suggests, for example, that the Board relied on factors Congress did not intend for it to weigh, that it failed to consider an aspect of the problem, or that it came to a conclusion belied by the evidence. See Escobedo, 602 F. Supp. 2d at 248. Rather, he challenges only the substance of the Army's conclusions. Given the standard of review the Court employs, such argument has little chance of success.

## IV. Conclusion

For the aforementioned reasons, the Court will grant Defendant's Motion for Summary Judgment and deny Plaintiff's. A separate Order consistent with this Opinion will be issued this day.

/s/ James E. Boasberg
JAMES E. BOASBERG
United States District Judge

Date: February 28, 2014